UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT L. WILLIAMS, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF SPARKS, *et al.*, <br><br> Defendants. | 3:14-cv-00174-VPC <br><br> **ORDER** |

Pending before the court is defendants' motion for summary judgment (#46). Plaintiff opposed (#s 49, 52, 53)[1], and defendants replied (#50). Having thoroughly reviewed the record and papers, the court grants defendants' motion.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Robert L. Williams ("plaintiff") was formerly an inmate in the custody of the Nevada Department of Corrections ("NDOC").[2] Acting *pro se*, and pursuant to 42 U.S.C. § 1983, plaintiff commenced this action on April 2, 2014, to challenge the events surrounding his arrest and conviction. Plaintiff named as defendants the City of Sparks, Sparks Police Department, Chief of Police Steve Keefer, Officer P. Fye ("Fye"), Officer Scott Hale-Byron ("Hale-Byron"), and Sergeant Keating ("Keating"). (#1-1.) On November 4, 2014, the District Court screened

---

[1] Pursuant to this court's order, the deadline for filing an opposition was October 12, 2015. (*See* #47.) After that date, plaintiff lodged two supplemental papers with the court: "plaintiff's supplement (2nd) reply to summary judgment" (#52), filed on October 19, 2015, and "evidence to support denial of defendants' summary judgment motion" (#53), filed on November 5, 2015.

The first of the filings is dated September 24, and, from its contents, appears to have been submitted within days of plaintiff's filing his opposition. (*See* #52 at 1, 7.) Therefore, under the prison mailbox rule, the filing is timely and will be considered a part of plaintiff's opposition. *See Houston v. Lack*, 487 U.S. 266, 270–71 (1988). Plaintiff's second filing, however, is dated November 2, 2014, three weeks after the filing deadline. (*See* #53 at 1.) Accordingly, the court will not consider it.

[2] Plaintiff was released on January 7, 2016. (*See* #58 at 1.)

1  plaintiff's complaint pursuant to 28 U.S.C. § 1915A, and permitted a claim of excessive force to
2  proceed against Fye, Hale-Byron, and Keating (collectively, "defendants"). (#s 6, 10) The court
3  dismissed the remainder of plaintiff's claims, finding that he had failed to state a claim against the
4  city defendants and that any challenge to his conviction or sentence was barred by *Heck v.*
5  *Humprhey*, 512 U.S. 477 (1994). (#6 at 4–5.) The parties subsequently consented to all further
6  proceedings and entry of judgment by the undersigned Magistrate Judge. (#26).

7  The events giving rise to plaintiff's claim are as follows. On the morning of December 29,
8  2013, defendants were dispatched to an apartment building in Sparks, Nevada, in response to a
9  domestic battery call. According to the 911 transcript, plaintiff and the victim, Natalie Taylor
10 ("Taylor"), had been up all night arguing, and plaintiff hit Taylor in the eye with an unopened beer
11 can. (#46-6 at 11, 14.) Taylor fled to a neighbor's apartment once plaintiff had fallen asleep, but
12 her six-year-old-daughter and fourteen-year-old son remained in her apartment with plaintiff. (*Id.*)
13 Taylor told the dispatcher that plaintiff was not armed. (*Id.* at 11.) Defendants met with Taylor
14 upon arriving at the apartment complex, and observed Taylor's "distinct, bleeding facial lacerations
15 in and around the area surrounding [her] left eye, and left neck." (#46-1 at 3.) Defendants entered
16 Taylor's apartment with her permission. (*Id.* at 4.) Plaintiff was sleeping on the bed in the master
17 bedroom, and Taylor's daughter was sleeping next to him. (*Id.* at 4–5.) At this point, accounts
18 diverge.

19 Plaintiff alleges that he awoke to defendants calling his name, and that they had approached
20 him, "2 from the back and 1 from the front." (#1-1 at 3.) Keating and Fye grabbed plaintiff's arms,
21 while Hale-Byron grabbed his legs, and together they put plaintiff on his stomach. (*Id.*)
22 Defendants handcuffed plaintiff's hands behind his back, then jumped onto plaintiff's back and hips
23 with their knees. (*Id.*) Keating yanked plaintiff up hard by the wrists, at which point plaintiff
24 yelled Taylor's name. (*Id.*) Defendants told plaintiff to shut up and threw him down on the floor,
25 face first. (*Id.*) The back left side of plaintiff's head hit the night stand. (*Id.*) Plaintiff does not
26 allege to have complained in the moment, but asserts that he told Hale-Byron that his head hurt
27 while they were walking from the apartment; that he got dizzy sitting in the back of the patrol

1 vehicle; and that, while in the vehicle, he shouted about his injuries to Hale-Byron, who was
2 standing outside. (#49 at 7–8.) As a result of the arrest, plaintiff maintains that he has had to seek
3 medical treatment for shoulder and hip pain, and that he now has a bump on the back of his head
4 where he hit the night stand. (*Id.* at 50.)

Defendants relate a more subdued version of events. Believing Taylor's daughter to be in "imminent danger due to her immediate proximity to a potentially dangerous individual," defendants decided to handcuff plaintiff while he was asleep. (#46-1 at 5; *see also* #46-2; #46-6.) Defendants approached plaintiff, turned him over onto his stomach, and handcuffed his wrists behind his back. (#46-1 at 5.) Plaintiff did not struggle or otherwise resist, and defendants did not use their knees restrain him. (*Id.*) After the handcuffs were secured, defendants turned plaintiff onto his back, helped him to sit up, and helped him to stand. (*Id.* at 6.) Defendants then took plaintiff to the Washoe County Detention facility. (*Id.*) Plaintiff did not say he was in pain during or after the arrest, and defendants did not observe any signs of injury. (*Id.*)

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not

1  weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th
2  Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

3  Summary judgment proceeds in burden-shifting steps.  A moving party who does not bear
4  the burden of proof at trial "must either produce evidence negating an essential element of the
5  nonmoving party's claim or defense or show that the nonmoving party does not have enough
6  evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
7  210 F.3d 1099, 1102 (9th Cir. 2000).  Ultimately, the moving party must demonstrate, on the basis
8  of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in
9  favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of
10 Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  The court views all evidence and any reasonable
11 inferences arising therefrom in the light most favorable to the nonmoving party.  *Colwell v.
12 Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014); *Tolan v. Cotton*, — U.S. —, 134 S. Ct. 1861, 1868
13 (2014).

14 Where the moving party meets its burden, the burden shifts to the nonmoving party to
15 "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle
16 Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  "This burden is not a light one," and requires
17 the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact,
18 the non-moving party must come forth with evidence from which a jury could reasonably render a
19 verdict in the non-moving party's favor." *Id.* (internal citations and quotations omitted).  The
20 nonmoving party may defeat the summary judgment motion only by setting forth specific facts that
21 illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248;
22 *Celotex*, 477 U.S. at 324.  Although the nonmoving party need not produce authenticated evidence,
23 Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the
24 material facts" will not defeat a properly-supported and meritorious summary judgment motion,
25 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

26 For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in
27 motions and pleadings are admissible to the extent that they are based on personal knowledge and

1  set forth facts that would be admissible into evidence, and the litigant attested under penalty of
2  perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

3  **III.   DISCUSSION**

4  **A.   Applicable Legal Standards**

5      **1.   Civil Rights Claims Under § 1983**

6      42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to
7  deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067
8  (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)). The statute
9  "provides a federal cause of action against any person who, acting under color of state law, deprives
10 another of his federal rights," *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and so "serves as the
11 procedural device for enforcing substantive provisions of the Constitution and federal statutes,"
12 *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under § 1983 require a plaintiff to
13 allege (1) the violation of a federally-protected right by (2) a person or official acting under the
14 color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff
15 must establish each of the elements required to prove an infringement of the underlying right.

16     **2.   Qualified Immunity**

17     "Qualified immunity protects government officials from civil damages 'insofar as their
18 conduct does not violate clearly established statutory or constitutional rights of which a reasonable
19 person would have known.'" *Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013) (quoting
20 *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine operates to ensure "that 'officers are
21 on notice their conduct is unlawful' before being subjected to suit." *Tarabochia v. Adkins*, 766 F.3d
22 1115, 1121 (9th Cir. 2014) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The qualified
23 immunity inquiry has two steps, in which the court first asks "whether the facts alleged show the
24 official's conduct violated a constitutional right," and then, if the answer is yes, "whether the right
25 was clearly established as of the date of the involved events in light of the specific context of the
26 case." *Id.* (internal quotation omitted). Accordingly, qualified immunity only becomes relevant

27

1 once "the plaintiff pleads facts which, if proved, would establish a constitutional violation."
2 *Ramirez v. City of Reno*, 925 F. Supp. 681, 688 (D. Nev. 1996).

### 3. Excessive Force

The use of excessive force "in the context of an arrest" is analyzed for a violation of the Fourth Amendment's protection "against unreasonable seizures of the person." *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). The relevant inquiry is whether the police officer's use of force was objectively reasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. A reviewing court must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Tolan*, 134 S. Ct. at 1865 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). "Stated another way, [the court] must balance the amount of force applied against the need for that force." *Bryan v. MacPherson*, 630 F.3d 805, 823–24 (9th Cir. 2010). In so doing, the court must allow "'for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Glenn v. Wash. Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Graham*, 490 U.S. at 396–97.)

The reasonableness analysis involves three steps. *Id.* First, the court weighs the gravity of the Fourth Amendment intrusion according to the "type and amount of force inflicted." *Id.* (internal quotation omitted); *see also Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010) (the court must consider the "quantum of force used to arrest the plaintiff"). Second, the court evaluates the government's interest in the use of force. *Glenn*, 673 F.3d at 871. In *Graham*, the Supreme Court identified three factors relevant to this inquiry: (1) the severity of the crime, (2) the threat the plaintiff posed to the safety of the officers or others, and (3) whether the plaintiff actively resisted or attempted to evade arrest. 490 U.S. at 396. Third, the court balances the gravity of the intrusion against the need for that intrusion. *Glenn*, 673 F.3d at 871. "When the governmental interests at stake are substantial, a greater intrusion upon the Fourth Amendment rights of the person may be justified. Conversely, when the governmental interest is insubstantial, the application of even

minimal force may be unreasonable." *Nelson v. City of Davis*, 685 F.3d 867, 878 (9th Cir. 2012). Because the balancing test in excessive force cases "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment . . . should be granted sparingly." *Santos v. Gates,* 287 F.3d 846, 853 (9th Cir. 2002). Nevertheless, summary judgment is appropriate if the evidence, when viewed in the light most favorable to the plaintiff, is insufficient support a finding of excessive force. *See Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005).

**B.  Defendants' Motion for Summary Judgment**

In advancing their case for summary judgment, defendants maintain that no constitutional violation occurred. More specifically, defendants argue that the severity of plaintiff's crime, the threat plaintiff posed, the quantum of force used, and the extent of plaintiff's injuries all weigh in favor of finding that defendants exercised objectively reasonable force. (#46 at 5–20.) Plaintiff responds that defendants acted unreasonably because he was sleeping when defendants entered the apartment, defendants knew he was unarmed, and he did not resist arrest. (#49 at 3–6.) He contends that he has had to seek medical attention for the injuries suffered. (*Id.* at 7–11.) Further, plaintiff argues that defendants are not entitled to qualified immunity because they did not act as objectively reasonable officers would have acted in the same circumstances. (*Id.* at 4.)

The court first considers the type and amount of force inflicted. Plaintiff has alleged that, while he was handcuffed and lying on the bed, (1) defendants all jumped on his back and hip with their knees; (2) Keating yanked him up hard by the wrists; and (3) defendants threw him down face-first, causing him to hit the back, left side of his head on the night stand. (#1-1 at 3.) It is undisputed that plaintiff made no attempt to flee, fight back, or otherwise resist arrest; as such, plaintiff contends that defendants should have "responded accordingly and simply supported plaintiff to his feet without continuing their intentional infliction of harm on a subdued suspect." (#49 at 6.) Defendants argue that that is exactly what they did, and submit affidavits denying plaintiff's allegations. (*See* #50 at 7; #46-1 at 5–6; #46-2 at 5–6; #46-6 at 4–5.) However, in resolving the summary judgment motion, the court must credit plaintiff's version of events.

The injuries sustained are also relevant in appraising the force inflicted. *See Santos*, 287 F.3d at 853–54. For example, *de minimis* injuries reasonably suggest *de minimis* force. Plaintiff's alleged injuries suggest such minimal force was used here. By plaintiff's admission, he made just two complaints of pain following his arrest—both times directed to Hale-Byron, and once, arguably, while Hale-Byron was not in a position to hear. Upon plaintiff's arrival at the Washoe County Jail, defendants contend that he was alert and oriented to person, place, and time; requested no emergency medical care; and showed no visible signs of trauma or wounds. (*See* #46 at 15.) Plaintiff does not offer evidence to the contrary. In fact, he did not seek medical attention until February 28, 2014, at the earliest. (*See* #49 at 8.) On March 21, 2014, plaintiff was prescribed naproxen for hip and shoulder pain, but x-rays of his hips and shoulders subsequently returned normal results. (*Id.* at 19–20, 22[3]; #46-7 at 16, 17, 19.) Finally, apart from his own speculation, plaintiff presents no evidence that he suffered a head injury, or that the bump on his head is anything more than a fatty lipoma.

Plaintiff explains that he did not seek immediate treatment because his pain increased gradually over time. (#49 at 7–8, 50.) He points to his consistent prescriptions for pain medication while in NDOC custody, and attests to having no prior head injury, shoulder pain, or hip discomfort. (*Id.* at 9, 50; *see also* #46-7 to #46-10.) However, even accepting these allegations as true, the balance of the medical evidence tilts against plaintiff.[4] Thus, considering the overall

---

[3] Plaintiff's medical exhibits are unauthenticated, but defendants do not dispute their authenticity.

[4] The court notes that plaintiff's claim is not barred altogether by the lack of objective medical evidence, as defendants suggest. Evidence of medical injuries is certainly helpful in establishing an excessive force claim, but the severity of the injury alleged is not dispositive. *See City of Davis*, 685 F.3d at 878 (absence of "concussive force" in an arrest not determinative); *Bryan*, 630 F.3d at 825 (force used during an arrest can be "unreasonable even without physical blows or injuries"); *Headwaters Forest Def. v. Cnty. of Humboldt,* 240 F.3d 1185, 1199 (9th Cir. 2000) (whether the use of force poses a risk of permanent or significant injury is just one factor for consideration), *judgment vacated on other grounds,* 534 U.S. 801 (2001); *Wilks v. Reyes*, 5. F.3d 412, 416 (9th Cir. 1993) (rejecting Fifth Circuit's requirement that a plaintiff show "significant injury" to establish excessive force).

nature of the force alleged, the court concludes that defendants intruded on plaintiff's Fourth Amendment rights, but that intrusion was relatively minor.

The court next considers the government's interest, beginning with the most important of the *Graham* factors: whether plaintiff "posed an immediate threat to the safety of the officers and others." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (internal quotation omitted). In this case, defendants were responding to an incident of domestic violence, a fact that alone suggests the presence of a significant threat. As the Ninth Circuit has recognized, "the volatility of situations involving domestic violence makes them particularly dangerous. When officers respond to a domestic abuse call, they understand that violence may be lurking and explode with little warning. Indeed, more officers are killed or injured on domestic violence calls than on any other type of call." *Id.* at 450 (internal quotation and citation omitted). While an officer's concern for his or her safety becomes less salient "when the domestic dispute is seemingly over," *id.*, the officers here were presented with a unique situation: Taylor's daughter was asleep next to plaintiff, a six-foot-tall man weighing between 175 and 200 pounds (*see* #49 at 50; #46 at 19). Defendants knew plaintiff to be violent and that he had been drinking, and were concerned that the child would be injured in a struggle or used as a hostage.

Plaintiff argues that the amount of force inflicted was unreasonable because he was securely handcuffed, and defendants knew him to be unarmed. Theoretically, such circumstances could diminish the threat a suspect posed to the safety of the officers or others. However, the court must also be mindful to judge the reasonableness of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The record demonstrates that, even if defendants were told plaintiff was unarmed, they did not have time to sweep the apartment, and did not know with certainty the information was correct. Plausibly, plaintiff could have retrieved a hidden weapon once Taylor left the apartment. Further, the presence of Taylor's daughter exponentially increased the exigency of the situation. Under the totality of the circumstances, this first factor weighs heavily in favor of defendants.

The severity of plaintiff's crime also favors the government.  Domestic violence is generally a misdemeanor offense in Nevada, Nev. Rev. Stat. 200.485, but the crime is certainly not to be taken lightly, *see Bolz v. City of N. Las Vegas*, No. 2:12–cv–00288–RFB–PAL, 2015 WL 4641060, at * 5 (D. Nev. Aug. 4, 2015) (noting that domestic battery "can undoubtedly constitute a serious offense in certain contexts").  Plaintiff, after entry of a guilty plea, was convicted of a felony: domestic battery causing substantial bodily harm.  (#46-2.)  Also taking into account Taylor's injuries and account of the incident, the severity of plaintiff's crime was significant.

Plaintiff did not resist handcuffing or attempt to evade arrest.  Therefore, the third *Graham* factor weighs in plaintiff's favor.  Nevertheless, balancing the minimal intrusion on plaintiff's Fourth Amendment rights against the government's substantial interest in intruding upon those rights, the court concludes that defendants' use of force was objectively reasonable.  Consequently, plaintiff has failed as a matter of law to establish a claim for excessive force.

### E. Other Miscellaneous Motions

#### 1. Plaintiff's Motion for a Preliminary Injunction

On December 19, 2015, plaintiff filed an "order to show cause for a preliminary injunction and a temporary restraining order" (#51) against NDOC employees involved in the opening and processing of plaintiff's legal mail.  Plaintiff contends that he has been harmed by NDOC employees who have failed to mail his outgoing legal documents.  (#51 at 1–4.)  The court denies plaintiff's filing, which it construes as a motion for a preliminary injunction, for two reasons.  First, no NDOC employees are named as parties in this action.  "A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court."  *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1985).  Second, in view of plaintiff's release from custody, plaintiff's claim for injunctive relief is moot.  *See Dilley v. Gunn*, 64 F.3d 1365, 1369 (9th Cir. 1995).

#### 2. Plaintiff's New Evidence in Support of Summary Judgment

On February 16, 2016, plaintiff filed a notice of "newly discovered evidence in support of plaintiff's motion for summary judgment in his favor" (#58).  On February 29, 2016, plaintiff

submitted a second, related filing, titled: "2nd motion of new evidence in support for summary judgment" (#61). Pursuant to this court's order, the time in which to move for summary judgment expired September 29, 2015. (*See* #45; #47). Plaintiff has not filed a motion for summary judgment in this action, timely or otherwise. Thus, it is not readily apparent whether plaintiff intends these belated filing to serve as a dispositive motion, or if he seeks to supplement his opposition. Regardless, they are improper. The court may strike an improper filing under its "inherent power over the administration of its business." *Spurlock v. F.B.I.*, 69 F.3d 1010, 1016 (9th Cir. 1995); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (inherent powers are tools for "control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"). Thus, the court strikes plaintiff's notice and motion from the record.

### VI.   CONCLUSION

Based upon the foregoing, the court concludes that defendants have carried their burden of demonstrating that the force used during plaintiff's arrest was not excessive, and, that plaintiff's Fourth Amendment rights were not violated. **IT IS THEREFORE ORDERED** that defendants' motion for summary judgment (#46) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for preliminary injunctive relief (#51) is **DENIED**, and plaintiff's notice and motion regarding new evidence in support of his motion for summary judgment (#s 58, 61) are **STRICKEN**.

**IT IS FURTHER ORDERED** that the Clerk **ENTER JUDGMENT** and close this case.

**IT IS SO ORDERED.**

**DATED:** March 11, 2016.

*Valerie P. Cooke*
**UNITED STATES MAGISTRATE JUDGE**